# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| WILLIAM ALLEN GARRETT, | ) | Case No. CV 20-4057-PA (JEM) |
| Plaintiff, | ) | |
| | ) | MEMORANDUM AND ORDER |
| v. | ) | DISMISSING COMPLAINT WITH |
| | ) | LEAVE TO AMEND |
| JOSIE GASTELLO, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

On May 1, 2020, William Allen Garrett ("Plaintiff"), a state prisoner proceeding <u>pro se</u>, filed a complaint pursuant to 42 U.S.C. § 1983 ("Complaint").

## SCREENING STANDARDS

In accordance with the provisions of the Prison Litigation Reform Act of 1995, the Court must screen the Complaint to determine whether the action: (1) is frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief.  <u>See</u> 28 U.S.C. § 1915A(b); 42 U.S.C. § 1997e(c)(1).  This screening is governed by the following standards:

A complaint may be dismissed as a matter of law for failure to state a claim for two reasons: (1) the plaintiff fails to state a cognizable legal theory; or (2) the plaintiff has alleged insufficient facts under a cognizable legal theory.  <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1990).  In determining whether a complaint states a claim on

1  which relief may be granted, allegations of material fact are taken as true and construed in

2  the light most favorable to the plaintiff.  Love v. United States, 915 F.2d 1242, 1245 (9th Cir.

3  1988).  However, "the liberal pleading standard . . . applies only to a plaintiff's factual

4  allegations."  Neitzke v. Williams, 490 U.S. 319, 330 n.9 (1989).  "[A] liberal interpretation of

5  a civil rights complaint may not supply essential elements of the claim that were not initially

6  pled."  Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

7         Although a complaint "does not need detailed factual allegations" to survive

8  dismissal, a plaintiff must provide "more than mere labels and conclusions, and a formulaic

9  recitation of the elements of a cause of action will not do."  Bell Atlantic Corp. v. Twombly,

10  550 U.S. 544, 555 (2007) (rejecting the traditional "no set of facts" standard set forth in

11  Conley v. Gibson, 355 U.S. 41 (1957)).  The complaint must contain factual allegations

12  sufficient to rise above the "speculative level," Twombly, 550 U.S. at 555, or the merely

13  possible or conceivable.  Id. at 557, 570.

14         Simply put, the complaint must contain "enough facts to state a claim to relief that is

15  plausible on its face."  Twombly, 550 U.S. at 570.  A claim has facial plausibility when the

16  complaint presents enough facts "to draw the reasonable inference that the defendant is

17  liable."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  This standard is not a probability

18  requirement, but "it asks for more than a sheer possibility that a defendant has acted

19  unlawfully."  Id.  A complaint that pleads facts that are merely consistent with liability stops

20  short of the line between possibility and plausibility.  Id.

21         In a pro se civil rights case, the complaint must be construed liberally to afford

22  plaintiff the benefit of any doubt.  Karim-Panahi v. Los Angeles Police Dept, 839 F.2d 621,

23  623 (9th Cir. 1988).  Unless it is clear that the deficiencies in a complaint cannot be cured,

24  pro se litigants are generally entitled to a notice of a complaint's deficiencies and an

25  opportunity to amend prior to the dismissal of an action.  Id. at 623.  Only if it is absolutely

26  clear that the deficiencies cannot be cured by amendment should the complaint be

27  dismissed without leave to amend.  Id.; Weilburg v. Shapiro, 488 F.3d 1202, 1205 (9th Cir.

28  2007).

After careful review and consideration of the Complaint under the relevant standards and for the reasons discussed below, the Court finds that the Complaint must be **DISMISSED WITH LEAVE TO AMEND.**

## ALLEGATIONS OF THE COMPLAINT

Plaintiff names as Defendants in this action Warden Josie Gastello, Captain M. Blackford, Lieutenant C. Garino, Sergeant R. Siordia, and Correctional Officer R. Day, all of whom are officers at the California Men's Colony-East ("CMC-East") in San Luis Obispo, California, and are sued in their individual and official capacities. (Complaint at 1, 4-5.)[1]

It appears that Plaintiff is attempting to assert claims based on the adjudication of four rules violation reports ("RVRs"), which were issued against him between July and September 2019 while he was incarcerated at CMC-East. (Id. at 6-8, 13-18.)

Plaintiff alleges the following:

On July 1, 2019, Plaintiff received a RVR for disrespect without potential for violence/disruption, in which it was alleged that Plaintiff used disrespectful language towards a recreational therapist. (Id. at 14, 30.)  On July 16, 2019, a clinician administered a mental health assessment to determine if Plaintiff was suffering from a mental illness at the time of the July 1 RVR.  The mental health assessor indicated that Plaintiff's mental illness contributed at least in part to the behavior that led to the RVR. (Id. at 14.)  Plaintiff requested an exculpatory witness, Correctional Officer J. Gomez, testify at the RVR hearing, but Sergeant Moreno denied the request on the grounds that it was an administrative RVR and Plaintiff was not allowed witnesses or staff assistance. (Id. at 14, 30.)  Plaintiff was found guilty of the disciplinary charge and assessed with confinement to his quarters for five weekends. (Id. at 31.)  The hearing report specifically indicates that the hearing officer considered the mental health assessment. (Id. at 30.)

On July 19, 2019, Plaintiff experienced auditory hallucinations, which produced severe anxiety and paranoia and caused plaintiff to shout while in his cell.  He received a

---

[1] The Court refers to the pages of the Complaint as numbered by the CM/ECF system.

RVR for disrespect with the potential for violence/disruption.  Defendant R. Day told Plaintiff he would keep receiving RVRs to keep him out of trash cans and would have Plaintiff transferred.  (Id. at 15.)  Plaintiff asked to have "the entire Second Floor of Building Eight as witnesses, as they would say no one was on the tier" at the time of the incident, but his request was denied because he could not provide specific names and CDCR numbers for any potential witnesses.  (Id. at 32.)  Plaintiff was found guilty of the disciplinary charge and assessed 30 days loss of credits and 40 hours of extra duty.  (Id. at 32-33.)  The hearing officer specifically indicated that the hearing officer considered the mental health assessment.  (Id. at 32-33.)

On August 8, 2019, Plaintiff received a RVR for being out of bounds.  The RVR alleged that plaintiff had walked to the program office and dug through the trash.  (Id. at 15.)  On August 27, 2019, a mental health assessment was conducted, and the assessor found Plaintiff's mental illness did not play a significant role in his behavior.  This was contrary to Plaintiff's mental health records, which documented that searching through trash was a symptom of compulsion related to Plaintiff's mental illness.  (Id. at 15.)  The disposition of the August 8 RVR is unclear.

On September 8, 2019, Defendant Day observed Plaintiff digging through the trash. Day told Plaintiff he would receive a RVR.  Plaintiff resisted verbally, and Day told Correctional Officer Lewis to take Plaintiff to a holding cell.  Plaintiff continued to engage verbally with Day, who then told Lewis to take Plaintiff to the ground.  Lewis told Defendant Siordia that Plaintiff had bumped shoulders with him.  Plaintiff received a RVR for battery on a peace officer.  (Id. at 16.)  On September 16, 2019, a mental health assessment was conducted.  The assessor concluded that Plaintiff's mental illness contributed to his behavior and recommended that the hearing officer take into consideration the significant decompensation of Plaintiff's mental illness and that the RVR be documented in an alternate manner.  (Id. at 17.)  Defendant Garino ignored this recommendation "without providing sufficient explanation despite numerous mental health assessments and Plaintiff['s] placement in a long term inpatient care."  (Id. at 7.)  Garino denied Plaintiff's

1   request to have his treating psychologist, Dr. Heidler, provide exculpatory testimony

2   regarding Plaintiff's mental illness.  (Id. at 7, 17-18.)  Dr. Heidler's testimony was denied

3   pursuant to Cal. Code Regs., tit. 15, § 3315(e)(1)(A), on the grounds that the appearance

4   would endanger the witness.  (Id. at 32.)  Plaintiff alleges that Defendant Blackford also

5   ignored the mental health assessment and determined the RVR was to be classified as

6   "serious without providing sufficient explanation which is required."  (Id. at 7, 17.)  However,

7   the hearing report clearly states that the mental health assessment was considered by the

8   hearing officer.  (Id. at 39.)  Plaintiff was found guilty of the disciplinary charge and

9   assessed 150 days loss of credits.  (Id. at 39-40.)

10          In each of the incidents that led to a RVR, "Plaintiff displayed bizarre behavior as

11   documented in his mental health assessments.  Despite clinical recommendations to the

12   contrary, hearing officers continued to assess penalties.  Plaintiff['s] mental illness clearly

13   contributed to the behavior that led to these four RVRs.  Plaintiff continued to receive

14   punishment, the incidents became progressively more serious until eventually clinicians

15   recognized Plaintiff['s] decompensation for what it was and referred Plaintiff to a higher level

16   of care."  (Id. at 13-14.)

17          Plaintiff asserts the following claims:

18          Defendants violated Plaintiff's "right to be free from cruel and unusual punishment for

19   Plaintiff['s] known mental illness in violation of the Eighth Amendment."  (Id. at 8.)

20   Defendants disregarded the mental health assessments and inflicted punishment for

21   Plaintiff's mental illness.  (Id. at 8, 23-24.)

22          Defendants violated Plaintiff's due process rights by refusing to allow Plaintiff to call

23   witnesses at the RVR hearings and failing to consider the mental health assessments.  (Id.

24   at 19-20.)

25          Defendants violated Plaintiff's equal protection rights by subjecting Plaintiff to

26   harassment and punishment, including issuing cumulative RVRs, because of Plaintiff's

27   mental illness and by ignoring recommended treatment and care.  (Id. at 21-22.)

28          Plaintiff seeks declaratory relief and damages.  (Id. at 9, 25-26.)

**DISCUSSION**

I.   **THE OFFICIAL-CAPACITY CLAIMS ARE BARRED BY THE ELEVENTH AMENDMENT**

All of the named Defendants are California Department of Corrections and Rehabilitation ("CDCR") officers, who are sued in their individual and official capacities. (Complaint at 4-5.)  Plaintiff's claims against Defendants in their official capacities are barred by the Eleventh Amendment.

In Will v. Michigan Department of State Police, 491 U.S. 58, 64-66 (1989), the Supreme Court held that states, state agencies, and state officials sued in their official capacities are not persons subject to civil rights suits under 42 U.S.C. § 1983.  The Supreme Court reasoned that a suit against a state official in his or her official capacity is a suit against the official's office, and as such It appears that Plaintiff was found guilty of the disciplinary charge, but it is unclear what penalties were assessed.   is no different from a suit against the State itself, which would be barred by the Eleventh Amendment.  See id.; see also Romano v. Bible, 169 F.3d 1182, 1185 (9th Cir. 1999); Stivers v. Pierce, 71 F.3d 732, 749 (9th Cir. 1995).  "[T]he [E]leventh [A]mendment bars actions against state officers sued in their official capacities for past alleged misconduct involving a complainant's federally protected rights, where the nature of the relief sought is retroactive, *i.e.*, money damages . . . ."  Bair v. Krug, 853 F.2d 672, 675 (9th Cir. 1988).  However, the Eleventh Amendment "does not preclude a suit against state officers for prospective relief from an ongoing violation of federal law."  Children's Hospital and Health Ctr. v. Belshe, 188 F.3d 1090, 1095 (9th Cir.1999).

To overcome the Eleventh Amendment bar on federal jurisdiction over suits by individuals against a State and its instrumentalities, either the State must have consented to waive its sovereign immunity or Congress must have abrogated it; moreover, the State's consent or Congress' intent must be "unequivocally expressed."  See Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 99-100 (1984).  While California has consented to be sued in its own courts pursuant to the California Tort Claims Act, such consent does

6

1    not constitute consent to suit in federal court.  See BV Engineering v. Univ. of Cal., Los

2    Angeles, 858 F.2d 1394, 1396 (9th Cir. 1988); see also Atascadero State Hosp. v. Scanlon,

3    473 U.S. 234, 241 (1985) (holding that Art. III, § 5 of the California Constitution did not

4    constitute a waiver of California's Eleventh Amendment immunity).  Furthermore, Congress

5    has not abrogated State sovereign immunity against suits under 42 U.S.C. § 1983.

6         Here, Plaintiff seeks monetary damages against Defendants in their official

7    capacities as CDCR officers.  (Complaint at 9, 25-26.)  Plaintiff's official capacity claims

8    against Defendants are tantamount to claims against the State of California, which are

9    barred by the Eleventh Amendment.  If Plaintiff chooses to file an amended complaint, he

10   should not sue Defendants in their official capacities.

11   **II.    THE COMPLAINT FAILS TO STATE AN INDIVIDUAL CAPACITY CLAIM AGAINST**

12   **        WARDEN GASTELLO**

13        In a Section 1983 action, a supervisory official cannot be held liable under a theory

14   of respondeat superior or vicarious liability.  See, e.g., Iqbal, 556 U.S. at 676.  A

15   supervisor's mere knowledge of the unconstitutional conduct of a subordinate does not

16   amount to the supervisor's own violation of the Constitution.  See id. at 677 (rejecting this

17   theory of supervisory liability).  "Absent vicarious liability, each Government official, his or

18   her title notwithstanding, is only liable for his or her own misconduct."  Id.

19        Under Section 1983, a supervisor may be liable if a plaintiff demonstrates either: (1)

20   his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal

21   connection between the supervisor's wrongful conduct and the constitutional violation.

22   Edgerly v. City & County of San Francisco, 599 F.3d 946, 961 (9th Cir. 2010); MacKinney v.

23   Nielsen, 69 F.3d 1002, 1008 (9th Cir. 1995).  Liability also can be established if the

24   supervisor set in motion a series of acts by others which the actor knows or reasonably

25   should know would cause others to inflict the constitutional injury.  Johnson, 588 F.2d at

26   743-44.  However, "[v]ague and conclusory allegations of official participation in civil rights

27   violations are not sufficient to withstand a motion to dismiss."  Ivey, 673 F.2d at 268.  Thus,

28   a high ranking administrator such as the Warden cannot be held liable under Section 1983,

1  absent a showing of personal involvement in the constitutional deprivation, or if there was a

2  sufficient causal connection between the Warden's wrongful conduct and the constitutional

3  violation.  See Redman v. Warden of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991).

4       Plaintiff's claims against Gastello in her individual capacity are based solely on her

5  supervisory position as Warden of CMC.  Plaintiff alleges no facts demonstrating that

6  Gastello was personally involved in or individually caused the alleged constitutional

7  deprivations.  Thus, Plaintiff has failed to state a civil rights claim against Gastello in her

8  individual capacity.

9       If Plaintiff chooses to file an amended complaint, he should not name Gastello as a

10  Defendant unless he can truthfully allege facts demonstrating that Gastello was personally

11  involved in causing the alleged constitutional violations.

12  **III.    THE COMPLAINT FAILS TO STATE A DUE PROCESS CLAIM**

13       Plaintiff alleges that the hearings on the RVRs violated his due process rights

14  because prison officials failed to allow him to present witnesses and failed to consider the

15  recommendations of the mental health assessments.  (Complaint at 19-20.)

16       Prisoners subjected to disciplinary action are entitled to certain procedural

17  protections under the Due Process Clause, although they are not entitled to the full panoply

18  of rights afforded to criminal defendants.  See Wolff v. McDonnell, 418 U.S. 539, 556

19  (1974); see also Superintendent v. Hill, 472 U.S. 445, 455-456 (1985); United States v.

20  Segal, 549 F.2d 1293, 1296-99 (9th Cir. 1977) (prison disciplinary proceedings command

21  the least amount of due process along the prosecution continuum).

22       Prison disciplinary actions are subject to the following procedural requirements under

23  Wolff: (1) written notice of the charges; (2) a hearing, with at least 24-hours advance notice;

24  (3) a written statement by the fact finders of the evidence relied on and the reasons for

25  taking disciplinary action; (4) the prisoner's right to call witnesses in his or her defense, if

26  doing so would not be unduly hazardous to institutional safety or correctional goals; and (5)

27  legal assistance to prisoners who are illiterate or whose issues are particularly complex.

28  Wolff, 418 U.S. at 556-71.

Prison officials are required to call witnesses requested by the prisoner for a serious rules violation unless the official conducting the hearing denies the request for one of the following reasons: the witness's appearance would endanger him or her, the presiding official determines that the witness has no relevant or additional information, or the witness is unavailable.  Cal. Code Regs., tit. 15, § 3315(e)(1).  The reasons for denial must be documented on the completed RVR.  Cal. Code Regs., tit. 15, § 3315(e)(2).

Plaintiff claims that his due process rights were violated when he was denied the right to call witnesses in his defense and when the hearing officer failed to follow the recommendations of the mental health assessments.  Plaintiff has failed to state a due process claim based on the facts alleged.

As to the denial of witnesses, there is no indication that the hearing officer failed to comply with the applicable regulations.  As to the July 1 RVR, it was not a serious rule violation to which the requirements of Cal. Code Regs., tit. 15, § 3315 would apply.  As to the July 19 RVR, Plaintiff was unable to identify any particular witnesses whose testimony he required.  As to the September 8 RVR, Plaintiff's request for Dr. Heidler's testimony was denied on the basis that it would endanger the witness.  This denial was articulated in the hearing report, as required by prison regulations.  Accordingly, there does not appear to be a due process violation under Wolff.

As to the alleged failure to consider the mental health assessments, this is contradicted by the record, which indicates that the hearing officer specifically acknowledged and considered the mental health assessments regarding the July 1, July 19, and September 8 RVRs.  (See Complaint at 30, 32, 39.)  The record appears to confirm that the hearing officer provided a written statement of the evidence relied on and the reasons for the disciplinary action, as required by Wolff.

Thus, Plaintiff has failed to allege facts sufficient to state a due process claim.  Although it appears that amendment may be futile, in light of Plaintiff's pro se status he should be granted leave to amend.

## IV.    THE COMPLAINT FAILS TO STATE AN EQUAL PROTECTION CLAIM

Plaintiff alleges that Defendants violated his right to equal protection by subjecting him to "harassment and cum[]ulative RVRs for Plaintiff['s] known mental illness," "ignoring recommended treatment and care" by mental health professionals, and denying him exculpatory witnesses at the RVR hearings.  (Complaint at 21-22.)

The Fourteenth Amendment's Equal Protection Clause is essentially a direction that all persons similarly situated should be treated alike.  City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439 (1985).  A plaintiff can establish an equal protection claim either by showing that he was intentionally discriminated against based on his membership in a protected class, see Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001), or by showing that similarly situated individuals were intentionally treated differently without a rational basis for the difference in treatment, see Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Engquist v. Oregon Dep't of Agriculture, 553 U.S. 591, 601-02 (2008).

Plaintiff has not alleged facts demonstrating that he is a member of a protected class, as neither prisoners nor mentally ill persons qualify as a protected class for equal protection purposes.  See City of Cleburne, 473 U.S. at 445-46; see also Heller v. Doe by Doe, 509 U.S. 312, 321 (1993).

Plaintiff also has not alleged facts demonstrating that similarly situated individuals were intentionally treated differently than him without a rational basis for the difference in treatment.

Thus, Plaintiff has failed to allege any facts that would support an equal protection claim.  Although it appears that amendment may be futile, in light of Plaintiff's pro se status he should be granted leave to amend.

## V.    THE COMPLAINT FAILS TO STATE AN EIGHTH AMENDMENT CLAIM

Plaintiff alleges that the "cum[]ulative punishment" he received for his "known mental illness" constituted cruel and unusual punishment in violation of the Eighth Amendment. (Complaint at 23-25.)

1    A sentence that is significantly disproportionate to the crime of which the defendant

2    was convicted may violate the Eighth Amendment's prohibition on cruel and unusual

3    punishment.  See Solem v. Helm, 463 U.S. 277, 303-04 (1983).  Plaintiff, however, does

4    not contend that his prison sentence is disproportionate to his conviction offense.  At best,

5    he contends that the Eighth Amendment is violated by the delay in his release date as a

6    result of his loss of good time credits.  Plaintiff has no constitutional right to be released

7    prior to the expiration of his sentence, see Greenholtz v. Inmates of the Nebraska Penal

8    and Correctional Complex, 442 U.S. 1, 7 (1979), and the disallowance of 150 days of good

9    time credits resulting from the September 8 RVR and 30 days of good time credits resulting

10   from the July 19 RVR would not extend his original sentence.  Even assuming that the

11   Eighth Amendment applies to disciplinary sanctions, the sanction imposed here is not so

12   grossly disproportionate or extreme as to violate the Eighth Amendment.  See Rummel v.

13   Estelle, 445 U.S. 263, 272 (1980) ("Outside the context of capital punishment, successful

14   challenges to the proportionality of particular sentences have been exceedingly rare."); see

15   also Harmelin v. Michigan, 501 U.S. 957, 1001, 1111 (1991) (Eighth Amendment violates

16   based on disproportionate sentences are "exceedingly rare" and apply only to "extreme"

17   cases).  Moreover, there is nothing to indicate that the sanctions dramatically departed from

18   accepted standards for conditions of confinement, created inhumane conditions, deprived

19   Plaintiff of basic necessities, or failed to protect his health and safety.  See Overton v.

20   Bazzetta, 539 U.S. 126, 136-37 (2003).

21   Plaintiff has failed to allege any facts that would support an Eighth Amendment

22   claim.  Although it appears that amendment may be futile, in light of Plaintiff's pro se status

23   he should be granted leave to amend.

24                                      *************

25   For the reasons set forth herein, the Complaint is **DISMISSED WITH LEAVE TO**

26   **AMEND**.

27

28

11

If Plaintiff desires to pursue this action, he is **ORDERED** to file a First Amended Complaint within **thirty (30) days** of the date of this Order, which remedies the deficiencies discussed above.

If Plaintiff chooses to file a First Amended Complaint, it should: (1) bear the docket number assigned in this case; (2) be labeled "First Amended Complaint"; (3) be filled out exactly in accordance with the directions on the form; and (4) be complete in and of itself without reference to the previous complaints or any other pleading, attachment, or document.  The Clerk is directed to provide Plaintiff with a blank Central District of California civil rights complaint form, which Plaintiff must fill out completely and resubmit.

Plaintiff is advised that he should not assert claims for which he lacks factual and legal support.  Rather, he should only assert a particular claim if he can truthfully allege facts that would demonstrate a constitutional violation under the standards set forth above.

**Plaintiff is admonished that, if he fails to file a First Amended Complaint by the deadline set herein, the Court may recommend that this action be dismissed for failure to prosecute and failure to comply with a Court order.**

DATED: July 13, 2020                         */s/ John E. McDermott*
                                          JOHN E. MCDERMOTT
                                          UNITED STATES MAGISTRATE JUDGE